IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALAN COLE ONSTAD                                               PLAINTIFF

      v.                          Civil No.   12-6020

DEPUTY JACK NARON;
DEPUTY TRAVIS HILL; and
SHERIFF PRESTON "PEP" GLENN                                    DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff

proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the East Arkansas Regional Unit of the Arkansas

Department of Correction in Brickeys, Arkansas.  The events that are the subject of this case

occurred while Plaintiff was incarcerated in the Pike County Detention Center (PCDC).  During his

incarceration there, Plaintiff maintains his constitutional rights were violated: when excessive force

was used against him; when he was placed in lock-down without an opportunity to be heard; when

he was deprived of his property; and when he was transferred to another jail.        Defendants have

filed a motion for summary judgment (Docs. 33-35).  Plaintiff filed a combined response and cross-

motion for summary judgment (Docs. 40-42).  Defendants filed a response to the cross-motion for

summary judgment (Doc. 46).   Two other responses and/or replies have been filed (Docs. 43-44).

The motions are now ready for decision.

**1.  Background**

Plaintiff was booked into the PCDC on December 27, 2009. *Defendants' Exhibit* (hereinafter

*Defts' Ex.*) A at pg. 1.  Holds were placed on him by Garland County, Polk County, the Hope Police Department, and the Texarkana, Texas, Police Department.  *Id.* at pg. 2; *Defts' Exs.* B-E.

The list of Plaintiff's personal property at admission was: one pair camo pants; white shorts; purple pants; wedding ring (silver in color); gray shirt; striped hoodie; and a nail puller.[1]  *Defts' Ex.* K.

Plaintiff had his first judicial appearance on December 28th.  He was appointed counsel, LaJeana Jones, and bond was set.  *Defts' Ex.* F.  He was arraigned on January 11, 2010.  *Defts' Ex.* G.  He remained at the PCDC until January 29th when he was transferred to the Garland County Detention Center (GCDC) and served with warrants there.  *Defts' Ex.* H.  Plaintiff's time of arrest is listed as 12:45.  *Id.*

The PCDC release of property form contained a wedding ring (yellow colored) and one bag of white clothes.  *Defts' Ex.* L.  The time of release is 1:05 p.m.  *Id.*  Plaintiff denies that he signed the form.  He contends his name was forged.  He also points out that the release was allegedly signed after he was already at the GCDC.

On January 28th, according to Deputy Travis Hill, he arrived at the detention center after having lasik eye surgery.  *Defts' Ex.* N at ¶ 3.  His vision was still blurry.  *Id.* at ¶ 4.  When Hill was in the booking area, he observed Plaintiff trying to drag items into his cell with a rope.  *Id.* at ¶ 5.  Hill ran to Plaintiff's cell and grabbed the rope while yelling at the Plaintiff to let go of it.  *Id.* at ¶ 6.  Plaintiff began struggling with Hill over the rope and began yelling at him.  *Id.* at ¶ 7.  Hill indicates he was pulled into the doorway of the cell and continued to struggle.  *Id.* at ¶ 8.  Deputy Jack Naron ran up beside Hill and sprayed a burst of pepper spray through the bean hole of Plaintiff's

---

[1]These documents were not signed until January 29th when Plaintiff was being transferred to Garland County.  *Doc.* 42 at pg. 5; *Defts' Ex.* K.  Plaintiff indicates this is when Sarah Haney noted that the forms were unsigned. *Id.*  He also notes that the bottom portion of the personal property at admission form where he is to certify that his personal property was returned to him was unsigned. *Id.*

cell.  *Id.* at ¶ 9.  Hill maintains that he was also struck in the face with pepper spray.  *Id.* at ¶ 10.  As soon as he was hit the pepper spray, Hill states the Plaintiff became complaint.  *Id.* at ¶ 11.

According to Hill, both he and the Plaintiff went outside to decontaminate.  *Defts' Ex.* N at ¶ 12.  Hill asserts that  the decision to decontaminate outside was made with Plaintiff's approval.  *Id.* at ¶ 13.

Hill states that "[t]he reason why we went outside to decontaminate is because the shower in the booking area only had hot water.  Since the pepper spray was on our faces, we both wanted to go outside and decontaminate in cold water."  *Defts' Ex.* N at ¶ 14.  According to Hill, it was "fairly cool outside" at the time --"probably around forty (40) or fifty (50) degrees."  *Id.* at ¶ 15.

Hill asserts that a regular garden hose was used to decontaminate.  *Defts' Ex.* N at ¶ 16.  Hill maintains that the hose had less water pressure than a regular hose because it had a valve in the hose to lower the water pressure.  *Id.*  Hill indicated that they were outside for approximately five minutes.  *Id.* at ¶ 17.  After that, Hill states Plaintiff was allowed to dry off with a towel.  *Id.* at ¶ 18.  In fact, Hill believes Plaintiff took a warm shower and received clean clothes once they were back in the detention center.  *Id.*

Deputy Naron indicates he was with Hill in the booking area and saw Plaintiff trying to drag something off the counter with a rope.  *Defts. Ex.* O at ¶¶ 3-4.  Naron indicates he remained in dispatch long enough to secure his weapon.  *Id.* at ¶ 6.  As he approached the holding cell, Naron states that he heard a lot of commotion and yelling.  *Id.*  He heard Hill yelling at the Plaintiff to let go of the rope.  *Id.* at ¶¶ 7-8.  Naron indicates the Plaintiff had made numerous threats towards jail officers.  *Id.* at ¶ 9.  "Given the commotion, Mr. Onstad's history of threats, and Mr. Hill's screams, [Noran says he] was afraid that Mr. Hill was tied up in the rope and was in danger of serious physical harm."  *Id.* at ¶ 10.  Noran says he sprayed a burst of pepper spray through the bean hole of

-3-

Plaintiff's cell.  *Id.* at ¶ 11.

According to Noran, he was also hit by the pepper spray.  *Defts' Ex.* O at ¶ 12.  They went outside to decontaminate because the shower in the holding cell only had warm water.  *Id.* at ¶ 13. From his training, Naron states he knew that decontaminating with warm water causes intense burning."  *Id.* at ¶ 14.  Naron did not recall it being "particularly cold outside.[2]"  *Id.* at ¶ 15.

Noran indicates they decontaminated Plaintiff by "holding the water [hose] between his eyes while he held his eyes open so the water could flush out the pepper spray."  *Defts' Ex.* O at ¶ 16. Noran states the hose did not have any type of spray nozzle.  *Id.* at ¶ 17.  In fact, he asserts that the water was not even turned on all the way.  *Id.*

Noran states that he does not know why the Plaintiff was "shipped out" to Garland County the following day.  *Defts' Ex.* O at ¶ 18.  He did know the Plaintiff had pending charges in Garland County.  *Id.*  Noran also states that "we wanted to get him transferred out of the jail as soon as possible because he was constantly destroying the jail."  *Id.*

According to Plaintiff, he never had a rope.  Instead, he states he tied his shower shoe onto a thin strip of his sheet (approx. 1/4 inch in width) and made a fishing type apparatus.  *Doc.* 42 at pg. 1.  Regardless, of whether it is termed a fishing type apparatus or a rope, it is undisputed that Plaintiff was attempting to take an envelope off the counter.

Plaintiff maintains he was twice put in isolation by Naron.  *Doc.* 42 at pg. 3.  The first time, Plaintiff indicates he was placed in isolation by Naron for passing a love note to a female inmate. *Doc.* 42 at pg. 2.  He was in isolation for two or three days from January 5th to either the seventh or the eighth.  *Id.* at pg. 4. In isolation, Plaintiff indicates he did not have access to a shower, television,

---

[2]Defendants' have submitted a detailed weather history for Mount Ida, Arkansas, on January 28, 2010. *Defts' Ex.* P.  The PCDC is located in Murfreesboro, Arkansas.  The two towns are approximately forty-six miles apart.

a telephone, or human interaction. *Id.*  With respect to the January 28th incident, Plaintiff indicates he was taken back to his cell the same day.[3]

### 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Arguments of the Parties

Defendants contend they are entitled to summary judgment in their favor based on the following arguments: (1) no official capacity claim is stated; (2) no excessive force was used; (3) the outside decontamination does not amount to an unconstitutional condition of confinement; (4)

---

[3]Plaintiff also maintains the jailers sometimes carried weapons in the facility and sexual misconduct occurred.  No claim has been made in connection with these allegations.

Plaintiff's due process rights were not violated when he was placed in a holding cell on two different occasions by Naron; (5) Plaintiff was not deprived of his property.  And, even if he was, no constitutional claim is stated; (6) he was not transferred to Garland County as punishment; and (7) he was not denied medical care.

Plaintiff concedes no official capacity claim is stated against Hill or Noran.  However, he maintains an official capacity claim is stated against Sheriff Glenn.  Plaintiff also states that he is not asserting a conditions of confinement claim with respect to the outside decontamination.  Instead, he states that is part of his excessive force claim.  Plaintiff concedes that no viable claim is stated based on his transfer to Garland County.

Plaintiff contends he is entitled to judgment in his favor on the following claims: (1) the official capacity claim against Sheriff Glenn; (2) the excessive force claim; (3) the Due Process claim; and (4) his claim that he was unconstitutionally deprived of his property.

### 4.  Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

#### *The Official Capacity Claim*

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  In

other words, the official capacity claims are treated as claims against Pike County.  *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

To establish Pike County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).  The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. Seymour v. City of Des Moines, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. Speer v. City of Wynne, 276 F.3d 980 (8th Cir.2002); Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. Szabla v. City of Brooklyn Park, 486 F.3d 385, 389-90 (8th Cir.2007).

Id. at 817-18.

Plaintiff notes that Sheriff Glenn was the ultimate authority at the time in question.  *Doc.* 42 at pg. 32-33.  As such, Plaintiff argues "his actions and or inactions, when viewed collectively most [definitely] show a custom or practice that was in use in Pike Co that led to Plaintiff['s] constitutional rights being violated."  *Id.* at pg. 33.  Plaintiff asserts that he sent multiple letters about Naron's abusive behavior to the Sheriff but none were found in Plaintiff's jail file.  *Id.*  Plaintiff argues that the Sheriff's attitude of indifference, his lack of concern, and his failure to take corrective action, amounted to deliberate indifference towards Plaintiff's safety.  *Id.* at pgs. 35-36.

These allegations are insufficient to establish a policy or custom of Pike County was the

moving force behind the violation of Plaintiff's constitutional rights. A policy is a deliberate choice to follow a course of action which is made from various alternatives by one who has the final authority to establish government policy. *See e.g., Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998). Clearly, Plaintiff's allegations regarding Sheriff Glenn's actions or inactions, in the circumstances at issue in this case, does constitute a policy.

A "custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional conduct." *Jenkins v. County of Hennepin, Minn*., 557 F.3d 628, 634 (8th Cir. 2009)(internal quotation marks and citation omitted). No such showing has been made here. Defendants are entitled to summary judgment on the official capacity claims.

### Excessive Force

Plaintiff maintains excessive force was used against him when he was pepper sprayed by Naron on January 28th and then decontaminated outside. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of

excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996). In general, the use of force is "justified when there was a concern for the safety of the institution, the jailers, and the inmates." *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993).

Courts, including the Eighth Circuit, have concluded that "a limited application of [non-lethal chemical agent] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)(discussing cases from a number of jurisdictions holding the use of chemical agents did not constitute cruel and unusual punishment if reasonably necessary to maintain security and order or subdue a recalcitrant prisoner). The Eighth Circuit also noted that when "[u]sed in such manner and purpose, its application should 'rarely be a proper basis for judicial oversight.'" *Jones*, 207 F.3d at 496.

Plaintiff was moved to the holding cell at about 10:00 a.m. *Plff's Ex.* C-7. He refused his lunch and drink throwing them back out the bean hole. *Id.* He soaked "the big Red Book." *Id.* Jailer Ken White indicates Plaintiff had been cursing and swearing every since he was moved to the holding cell. *Id.* After he began cursing Naron, Plaintiff was told several times to sit down and cool

off but he continued his behavior. *Id.* He also attempted to obtain items off the booking desk.

Plaintiff maintains spray should not have been used against him merely because he was teasing and cussing Naron. Additionally, Plaintiff states that Hill never yelled and there was no struggle. *Doc.* 42 at pg. 9. Instead, Plaintiff states the sheet was snatched from him and he was sprayed. *Id.* In Plaintiff's opinion there was no reason to spray him since he was confined in a locked one man cell.

Certainly, there is less need for the use of force when the inmate is already locked down. However, Plaintiff does not deny that he was being disruptive, failed to follow orders, or that he attempted to obtain objects from the booking desk. Under the circumstances, there is no genuine issue of material fact as to whether the force used by Naron was excessive.

Plaintiff also maintains that the decontamination outdoors with a garden hose with a standard pressure nozzle in the cold, being forced to the ground which was covered with an "icy slush," and then having his entire body being sprayed while Defendants nudged him with their boots, was a continuation of the use of excessive force. *Doc.* 42 at pgs. 21-23. Plaintiff also contends he should have been seen by medical personnel. In support, he submits the Material Safety Data Sheet (MSDS) for Olerresin Capsicum spray which states that if there is eye contact medical attention should be sought. Plaintiff states he was seen by Emergency Medical Technicians (EMTs) later that day. However, as no record of this occurring can be found, Plaintiff maintains the Defendants had him seen by fake EMTs to appease him. Merely because the MSDS says medical treatment should be sought when eye contact is involved, does not transform the failure to do so, or sending in fake EMT's, into a constitutional violation.

***Due Process***

When "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, due process requires some kind of hearing beforehand." *Jones v. Mabrey*, 723 F.2d 590, 594 (8th Cir. 1983). "The Supreme Court has outlined the procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008)(*citing Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)). These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id; see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

In *Brown-El v. Delo*, 969 F.2d 644 (8th Cir. 1992), the Court noted that it did:

> not quarrel with the prison's need to segregate individual inmates from the general prison population for non-punitive reasons; for example, where the inmate is being held pending an investigation of misconduct charges or where there is a threat to the safety and security of the institution. Absent a showing of an expressed intent to punish by the prison officials, whether an inmate is segregated for "punitive" reasons or for administrative purposes generally will turn on whether the detention is reasonably related to a legitimate government objective. If the decision to segregate is arbitrary or purposeless, a court may infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon inmates.

*Id.* at 647-48 (internal quotation marks and citations omitted).

Defendants have relied on *Sandin v. Conner*, 515 U.S. 472, 486 (1995) and cases applying it. They assert that Plaintiff must show some type of atypical and significant deprivation before his liberty interest is implicated. They also maintain that short periods of segregation do not trigger Due

Process protection.  Their reliance on *Sandin* and cases applying it is misplaced.  *Sandin* applies to convicted inmates not to pretrial detainees.  *See e.g., Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012).

　　While the Court is told the one move to the holding cell was made in response to Plaintiff's attempting to pass a love note, there is no information submitted to indicate if Plaintiff was given a disciplinary charge, who had permission to move him, the reason for the move, etc.  Similarly, with respect to the January 28th move, the Court has no information suggesting what prompted the move.

　　Despite the voluminous records submitted by both sides, there is insufficient information in the record to determine whether either side is entitled to summary judgment on this claim.  The record must be more fully developed before it can be determined if a valid Due Process claim is stated. Defendants should be directed to submit a supplemental summary judgment motion on this claim.

### *Deprivation of Property*

　　The Fourteenth Amendment protects against deprivations without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981).  "A deprivation by state action of a constitutionally protected interest in life, liberty, or property is not actionable under § 1983 'unless and until the State fails to provide due process.'" *Zar v. South Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 465 (8th Cir. 1992)(*quoting Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).   Post-deprivation remedies are "sufficient when the deprivation was unpredictable, when a pre-deprivation process was impossible, and where the conduct of the state actors was unauthorized."  *Id.* (citations omitted).

　　In this case, Plaintiff maintains that when he was released he did not receive all of the property he had with him when he was booked in.  *Doc.* 42 at pg. 6.  He also maintains he acquired

-12-

property while at the PCDC and this property was not returned to him. *Id.* He maintains his signature was forged on the release of property form. *Defts' Ex.* I; *Doc.* 42 at pg. 6. He also notes that it was signed by a different officer and the time listed is after he was at Garland County. *Doc.* 42 at pg. 8.

Pre-deprivation process was not possible under the facts of this case. Moreover, Plaintiff's procedural due process rights were not violated because he had adequate post-deprivation remedies. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984)(intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994)(negligent or intentional deprivation of prisoner's property fails to state claim under § 1983 if state has adequate post-deprivation remedy); *Elliot v. Hurst*, 307 Ark. 134, 817 S.W.2d 877, 880 (1991)(cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). Defendants are entitled to summary judgment on this claim.

**5. Conclusion**

For the reasons stated, I recommend that Defendants' summary judgment motion (Docs. 33-35) be granted in part and denied in part. Specifically, it should be granted as to: (1) all official capacity claims which results in the dismissal of Sheriff Glenn; (2) all claims against Hill; (3) the excessive force claim against Naron; and the (4) deprivation of property claim. The motion (Docs. 33-35) should be denied with respect to Plaintiff's Due Process claim stemming from his moves to segregation. Defendants should be directed to file a supplemental motion for summary judgment in respect to the Due Process claim. Plaintiff's motion for summary judgment (Docs. 40-42) should be denied.

   **The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

   DATED this 15th day of August 2014.

        /s/ *J. Marschewski*
        HON. JAMES R. MARSCHEWSKI
        CHIEF UNITED STATES MAGISTRATE JUDGE